Good morning, Your Honor. In the interest of the Court, I'd like to reserve five minutes of my time for rebuttal. In this report, in this case, you will record the explicit legislative commands of Financial Code Section 22302, Subsection A, and Civil Code Section 1670.5, a grantee reconsideration that granted summary judgment to CashCall on the unconscionability. In adopting CashCall's contention that devising a remedy for the unconscionable loan terms that it sold to borrowers is prohibited by the general principle that the Court should not engage in economic policymaking, the District Court ignored the plain language of the Financial Code Section. Well, let me start off so I understand your contention in this case. The only substance of unconscionability you're claiming is the amount of the interest rates, correct? No, Your Honor. What other substance of unconscionability did you claim, Your Honor? Reflecting that the entire subset of the loan terms are unconscionable, the amount of the loan, $2,600 and above, the interest rates range from 96 to 135 percent, and the term of repayment, which is three and a half years. In combination, we are alleging in the trial court that the amount of the loan can be unconscionable. Not the amount of the loan in and of itself. Right. But in combination with the interest rate of repayment. Right. If this interest rate is not unconscionable, you're claiming it's unconscionable. No, Your Honor, because I think the term of repayment of the loan is in combination with the interest rate. Okay. Now, stop for a second and listen to my question. Let's assume that we were told, or some court were told, that these interest rates, which are very high, are not illegal. You're claiming they are just as high. I don't agree, but I understand what you're asking. Well, tell me why you don't agree. I don't agree. Certainly, if these interest rates are okay, then use the terms. Let me answer by way of an example. If we had a payday loan where someone loaned one of these borrowers, let's see, $500 or $1,000. It would be the same interest rate for two weeks. That would be a regulated loan, and that would violate the explicit statutory procedures. Let me make the question easier for you. I don't think you give all your case studies. This is just my focus on what you're here about. If these loans were at 1%, would they be unconscionable? No. If they were at 10%, would they be unconscionable? Probably not. So, unless the interest rate is unconscionable, you're claiming it's not illegal? I'm not. I would agree with the question because I think that it's the combination of terms. Once you pull out an unconscionable interest rate, the rate that you think is unconscionable, whether or not you're fighting it, because you think it really is your claim, then you really don't have a claim, right? If the interest rate is okay, you don't have a claim that these loans are unconscionable. I would agree with you. Okay, so that's my way of getting to what I think is the relationship in this case. So, in order to get you relief, the district court would have to say there's no loan. If the interest rate is in the cases of 36% or 37%, it's unconscionable, right? No. And here's why not. If the court determines that the combination of terms which you focus on has the interest rate being unconscionable, if it makes that liability determination, it has a range of sources statutory in case law. Now, you're answering a different question than what I asked you. But it may well be that the court has the power to do that. It's tolerable, it gives us the power to do that. But the question is really how, at the end of the day, the court has to find these specific interest rates unconscionable in order for you to proceed, doesn't it? Yes. Okay. So, if it does that, in this case, I don't think the district court is going to know how much you respond to it. But you didn't necessarily say that the rate of this amount or above is not legal. Yes. Okay. So, how can the court do that once the California legislature decriminalizes these things? Because the California legislature specifically directed the court. Well, it didn't endorse the authority of the court. It specifically directed the commissioner. I understand you're arguing with that because the commissioner has the power in that case, and that wraps up this bill clearly. No, the subsection A of the financial code authorizes the court to determine whether a loan is above $2,500. But the words of the court in the end of the term, subsection A, I don't need to sit through them. I don't have the subsection. It was 57 otherwise in court to do that. But subsection A of the incorporated $1,650, do you have a court power to do this? It authorizes the court, I believe, Your Honor, to determine whether loans above $2,500 are intoxicable under the statute of intoxicability, $1,670. $1,670. Good. I know it incorporates that statute, but does it separately authorize the court to determine whether loans above $2,500 are intoxicable? No, if you're getting to whether or not the financial code authorizes a private right of action, it doesn't matter. No, I understand that it doesn't matter, just because by focusing on what you say, it specifically authorizes the court to do it. It doesn't. But your argument is that it's illegal for the financial code. Therefore, you haven't used the alcohol subsection, right? We haven't used the alcohol subsection. But you don't contend that the financial code creates a course of action, do you? That's what you're talking about. I'm a little confused. My understanding was that your argument was that it was a loan fraud. It was either the interest rates and the marginal cost, the profit, the length of the loan, and all that made this loan intoxicable. You're not. I didn't understand your argument to be that every loan that's ever made with this interest rate was intoxicable. Am I confused, Your Honor? No, you're not confused, Your Honor. Our argument is that the combination of the terms and taking into account the purpose setting and the effect of the loans when cash flow, determine what the combination of terms were, that renders these loans intoxicable. We're saying that you're right. We're not saying that all loans with this interest rate in California by anybody are intoxicable. No. But you best define the interest rate, I'm not sure. That's right. Your Honor, I think that's putting the cart before the horse. Well, I know that, but I get to put the carts before the horses in whatever order I want, so. So, yes or no? Yes. Okay. So, here it's not liability or remedy. The issue is that of the district court here. In other words, it's fine to find it in your favor. The district court essentially says, I don't want to make assumptions here. If I were going to find it in your favor, I'd have to find the interest rate of cash flow. And if I were to be sending an interest rate, I don't think you can do that. I know you can see talk of regulatory stuff, but I think that's essentially what you just said. Let me just hand you the question. Why don't we certify this question in the California District Court? I don't think we need to do that. Well, we don't need to. Of course we don't need to. It's a great district here. But this is an important issue. First, no California decision controls this. It affects a very big industry. There's no federal question jurisdiction here. This was supplemental jurisdiction. Why don't we put this one off to the state court and let them tell you what the standard is? I think you are under the determination that the district court made here, but not as to whether the interest rate in isolation or the interest rate in combination with the other terms is unconscionable. What the district court found is that she was excluded from deciding liability because she would have to determine the interest rate. Well, she would. I mean, see, that's where I'm having difficulty with the argument. She might not be able to. I know that one of the cases in California, there's an assessment interest rate. But whether or not the remedy is different than a first liability determination, and if you're willing to agree with me that she has to find this interest rate unconscionable, perhaps in combination with the other terms, then she's really saying there's an interest rate with these terms that violates California law, right? Right. And the other side is contingent, and I don't want to make the argument for it, that violates California law, that the terms have to be independently unconscionable because they are free and sovereign. She went to a supreme court jury. It's a legal issue that the California Supreme Court just hasn't spoken on. Why don't we just ask it? The question I would ask, Frank, based on all of the evidence that was before the district court and summary judgment, is whether the combination of the other terms is unconscionable. Yes, unconscionable. But the position of the other side is that no interest rate, no interest rate can be unconscionable on these terms. And that's sort of the criteria along the way on it. If the interest rate, if you can't find the interest rate independently unconscionable, then you have to introduce the interest rate. I don't think so because it's a legal issue. Let me ask the same question in a little different terms. Even stating the issue the way you have stated it, there is no control in California cases. Did you cite that question? There's no case that deals exactly with this. Well, what's the best case that you think should guide the court  Well, there are a number of cases. From the Supreme Court? Yes. And which one is that? Well, there's a Purdue case from 1985. Purdue doesn't answer this question directly, does it? Purdue says, ask the question of whether or not you could challenge a price term as unconscionable. But Purdue was before the statute was adopted, taking away the interest rate cap on these items, right? Yes, it was before the statute was reenacted. The statute was reenacted three years after the Carboni decision, which said a 200% interest rate was unfit. We're not dealing with that. Well, in spite of those cases, the statute, in effect, deregulated the interest rate or took the cap off the interest rate on loans of 2,500, right? Yes. And there's no California case that addresses what that cap removal means, especially coupled with the statement that the unconscionability provision still applies. See, to me, those two statements in the statute are in tension with each other. And the California Supreme Court has never tried to resolve that. And that's what you're asking us to resolve, isn't it? Well, you ended up asking me to send the case back to the district court for trial because there are many cases which authorize the court to make the unconscionability liability determination. Are there any cases offering deregulated loans under the FAA? Not that I'm aware of. The financial code, which points to 1670.5, authorizes courts to make their determination with respect to rates. That's what it concerns with. Nobody doubts, even your opponents, that if a loan said, you know, it would be a default if we blink your eye, we could declare that a provision unconscionable. The question is whether or not the court has any power to use the rates of these loans as an element of unconscionability. Even if there's nothing that you're arguing about, your opponents say, you know, the power was taken away by the legislature. You say, you can still do. I just would like to know if the California Supreme Court thinks that way. Well, simply because I don't think it's necessary. I think we had the discussion before. You have the legislation in the financial code which says that for loans of $2,500, courts are charged with determining in an appropriate case whether those are unconscionable or not. Is there any argument that you can write out that would prevent the insurance companies from taking on the problem? I'm glad to know the reason. I think, as I said, we're going to start to regularly, close to regularly, loans of $2,500 a month. For everything else, those loans are subject to the unconscionability statute in California, and those have the two prongs which we briefed. Right. You're only subject to unconscionability in this case, I think. You have a procedural unconscionability argument, which is that you have a procedural unconscionability, but it's not determined sufficiently. But you have to have substance to unconscionability. Yes, you have to. You have to. We have to prove at trial that the terms, the combination of terms, are overly harsh or unfairly favorable to the stronger party principle. We think that when we get to trial, that this court can make those determinations based on the materializes effect. But there is no dispute, as long as you come back to the certified, there's no dispute about what the interest rates were, is there? No. You said the California Supreme Court said, and your opponents say this as well, one may not take the level of interest rates into account when determining the unconscionability of a deregulated loan. Is that the point in this case, is it? If you would certify that question, they would look at us and say, yes. And if they say you may, the district judge will know precisely what their job is in this case. So that's why I think it's fair. You know, I understand why you post-certification, but to me, this is a tough question. Either way, and I'd like to get answers to some tough questions, because it actually is an authority, and I'll be reserving my time, but I don't think we've gone over what we'll give you some time for. Thank you. Thank you. Good morning, Your Honor. I'm here at the Supreme Court. My name is Brad Seeley, and I represent Cash Call. I was going to ask if I could reserve a minute. I don't want to cross you, but it doesn't seem like an hour. No, you get one shot. Okay. The Supreme Court here properly granted summary judgment finding that it could not award the request of relief, which was restitution or interim relief, under California's unconstitutional law, without determining the appropriate interest rate, the appropriate or not uncertain rate. Could you charge 2,000 percent? Under the statutory scheme, yes, subject to Department of Business Oversight regulations. Could the Department of Business Oversight regulations find 2,000 percent unconscionable? The Department of Business Oversight could do that because this is a highly regulated field. Well, if it could. If it could. If it's illegal. Because if they're allowed to find it unconscionable, they would have to find a new thing. Correct. It can take enforcement action. It's authorized to do that. Yes. And would the UCL give rights to the course of action on the part of the private plaintiffs to do what the commissioner could do? I thought that's what the UCL was all about. We don't view that the UCL is a broad remedial statute. However, there is 40 years, at least, in the California case law that says, notwithstanding the broad remedial purposes of the UCL, there are certain instances where courts should not step in and use that broad remedial statute to engage in what is economic regulation. So is it consensual? I get the name of the case law, but the case in the California Court of Appeals decided that they weren't able to found it. Is the interest rate unconscionable? They rule. Carboni? Yeah. Carboni does not involve finance matters at all. Well, I don't really have to start asking. It involves a deregulated loan. So is it a loan not subject? I disagree. It doesn't involve a deregulated loan. Yeah. Well, it involves a loan that's not subject if the interest rate can't be corrected. It's not subject to usury laws. Right. That's correct. So the court in that case made up its own. They said you're charging 200 debts too much. I'm going to limit you to 24. Wow. All the case law that you cite about courts office or around it would seem to apply there. So your position is the court's law in Carboni? On the facts of Carboni, no. But Carboni is not, your Honor, a UCL case. Carboni is a case in which it's a defense against the loan. It's a defense against the loan. Bauer raised that defense. It's an individual action. And it wasn't just about the interest rate in that case. Remember, your son says it's not just about the interest rate here yet. Well, they say that repeatedly. But if you go back and look at the court's class certification order and the points that they made on class certification, the claim that was certified here was a claim for unlawfulness under the unfair competition law. I'm curious then, if I go back and look at the class certification order, when your opponent gets in trouble, in your view, and I've read the language, what's the class? What's the class in the claim letter? The class claim that's certified and it's clear from the order is that these loans are unlawful because they violate the unconscionability statute. And what they said to get certification is it's easy. It's common issues because all you've got to do is look in up straight. I forgot what they said. I can go back and find it. I'm trying to figure out how you would interpret the order in its face. Is the order in its face that a class certification deforestation, whether the interest rate is unconscionable, or is it whether these loans are unconscionable? It's whether the interest rate is unconscionable. That's what the court said and the court said. We can determine that by looking at two issues, two common issues. What is the price charged in the market? What are other people charging in the market? So we can compare it, and that comes from the Purdue case, the California Supreme Court's decision in Purdue. Here we can look at cash loss justification for it, and that's what the court says. And so we come to silvery judgment and we come to this court now, and the plaintiffs are doing, as we say, in a reasonable bait-and-switch here where they're saying, we said there's only two things you need to talk about to determine whether the interest rate, and the interest rate alone is unlawful. That's the claim. Now we're going to say there's all these other terms. So what the court needs to evaluate, I think that in court, the District Court's energy-certifying class is going to bring to your office other factors that are not part of the litigation. You need to get into the correct remedy rather than the existing economic and legal issues. That is the basis of our cost of appeal, Judge Coleman, and I agree with that. I think that is something the District Court will have to do for both of the cases. We have appealed the court's certification order, and as we said, you know, had the court not granted reconsideration based on the District Court's summary judgment order, which introduced all of these extrinsic arguments beyond the arguments that the plaintiff said and the court's done for all of this necessary, we would have been moving to the certified District Court. But we are here now appealing this order because given the situation we were in, where we were presented with a very narrow issue, where there's only two issues that you need to decide, and on one of those issues, one of those issues is the comparison to other laws. The plaintiffs say, we don't have any evidence of that because there is no evidence. There's no way to compare it. I want to go back to what the judge did in the cost of certification order, and that's why Esther Pontes, she says, as the substance of unconscionable, because it's finding an issue where the answer strike was unfairly one-sided requires a single determination. For all class members, without regard to the particular circumstances in which class members dispense a contract. So that's an issue, that's an issue that was, that was certified for class treatment, correct? Whether the interest rate is one-sided. The interest rate. Yeah, the interest rate. Okay, so let's get back to, I want to get back to the question of the 60 year voting. No, I suspect you don't want to certify the interest rate, but certainly the certified district, how far is that going? It's nice after eight years of litigation to be able to agree with your opponent on something when it's recognized. No, no, I don't think so, for some of the similar reasons, it's a certain phrase. So, how long were you filing? I'm broken right now. You know, you're coming to three federal judges on a state cost of actions difference that you're talking to, and saying, boy, we all think the California Supreme Court will find this out, and I can't find anything with California Supreme Court that is to address this question. It affects all interests, and it affects a lot of demographers. And you're asking us to be, you're asking us to look like California law. I do think the concerns you're expressing, Judge Roberts, go to the heart of this economic regulation motion, because not only do we have courts who shouldn't get this associated thing, but your California Supreme Court, a long line of California Court of Appeal decisions says that CalPERS, by the way, is our best case on that. No intermediate legal support, right? We're not qualified. That was the only case that really used that phrase, economic regulation. Oh, like Harris versus Capital Advisors, it's a California Supreme Court case that talks about economic regulation. So, it's a concept that runs through California jurisprudence. And I think, you know, if you have a federal court, I think you need to be even more concerned about the federal courts. By the way, we're doing it. We can't be more concerned. We are. We are for the purposes of this, of your diversity and the diversity of cases in California court. We should move exactly the same way in California court. We don't have an extra case that would be possible because two of us are from California. We are not. We are not from California law. For better or worse, this case was filed in federal court. You know, I kind of think that there's no point in getting onto what I'm saying because that's a way to forget the road on that. Well, we have a single issue. Well, let me get back to your delay issue. A single issue might take us six months to disclose it. It might take us a year. It might take us three months. We don't know. We can ask the California Supreme Court tomorrow whether or not it wants to take it. If it does, and if you can get to that road, this case will be either halted because your business won't prevail or we'll know that we need to be able to push. We should reverse the district judiciary and send it back to the trial. And in the meantime, we will not be enacting either an economic resolution or ignoring this unconstitutability provision in the code that appeals to me. Other than delay, since you've been waiting eight years for a delay, the delay doesn't really impact everybody. Why shouldn't we see delay? Here are a couple points. One is historical. This case really started out in St. Louis. We had a case called Hicks v. Nashville, which was filed in 2006 in the Los Angeles Superior Court at the Conference of Courthouse. Same theory is alleged. Same lawyer. But Judge Cheney, who's now on Court of Appeal Justice, the California Court of Appeal, dismissed the unconstitutability claim on the plaintiff. She ran a brief 12-minute based on allegations. Well, you may have an issue with a collection of murder cases, a raising for a perjury case, or another case in which you catch a collection of all. But that's not the issue in front of us. And that case didn't go up. We don't have a published decision on that case. It didn't go up in court, so we don't know. I just pointed out that it's very easy for a well-respected Superior Court judge to make a pretty short drift. My judge may be smart enough to say, okay, but let me just get to the second round for affirmance here, which was dropped earlier. Affirmance. Putting aside the economic regulations, let's just assume everything they say is okay, that it's okay for the court to do this. It doesn't amount to economic regulation that the court can go in and do what Carbone did in the case of Scrappy, which the corporate absolutely has to do to do a fair case. And I understand your argument on that, but surely, if that's your argument, then it's not your own issue. No, it's not your argument, because unconscionability is a question of all of them. Right. It's just as determined. But surely, aren't they entitled to that evidence that they have? And all these laws are so risky. First of all, I think that the stories of class issue are just a separate problem. I don't see how that's a separate judgment issue for us. At this point, without a finding by the district judge, even, maybe we'd send it back to her if it was a district judgment issue. She's here for a judgment. But the first summary judgment order she did, and on certain instances, she got it wrong, and partially she got it wrong, because she played all of these extrinsic arguments that I understand how she should have. I understand how we could say to the judge, you could go back and look at this in the summary judgment, and maybe you got it wrong. Maybe there were fact issues, but do you really think on this record that we can find that the laws were constrainable because there's no question of fact that all the bar orders were so difficult and that we don't have confidence with them? I mean, it just strikes me these are factual questions that really aren't implicated.  You guys only can make that determination on this record, Your Honor, because on the issues that are relevant to substantive unconscionability, putting aside procedural unconscionability, we know this is an incurable event situation like a loan you can't negotiate. Right, but there's some level of procedural unconscionability. Nobody's going to say anything. It's incurable. It establishes a very minimal level. So we go to substantive unconscionability, and we look at the factors that the Purdue Court has set up specifically for affirmative convenience. Yes, Your Honor. Yes, Mr. Judge. First argument. What is the comparison of those loans to similarly situated loans in a similar transaction? So similar situated borrowers in a similar transaction. What are the interest rates other people are offering? We put forth evidence that said there are a number of these are subprime borrowers and value-added debt. And then here are the types of loans a subprime borrower could get. You know, the entire credit market, we know, is a very diverse and competitive market. But let's just look at this a little bit. I'm hearing your argument. It's a question of fact. So, Your Honor, what did the plaintiffs say in response to that? They said, well, there actually are no comparable loans. There are no comparable loans. So we can't offer any comparison. So that first basis, you can look at it and see there's no evidence. So we get beyond them. They haven't established any evidence of a trial to show the fact that the loans are out of line with the norms in the industry. So they send in a show on class certification. Then we get to the justification. Cash Costs CFO puts in evidence and says, here's how we do business. This is a risky business, high default rate, high costs. Our cost funds are very high. And so if we price these loans to be consistent with our cost, it is 15% to 20% profit. Our case law says 100% profit's OK. But the court says plaintiffs have produced no evidence that Cash Costs makes excessive profits. What's the response to that? Their expert witness agrees. Their expert witness says, we agree that Cash Costs require us to charge higher interest rates. So he agrees on that fact. But he tries to dispute or quibble with us and says, well, that's bad, Mrs. Hoffman. We understand that they have to charge higher interest rates to make what the courts would say is a relatively modest profit. We understand that. We just think that you should have done it differently. You shouldn't have advertised these loans. You say, OK, so bring forth that showing that you just went through with that defense. You create a feeling that the unconstitutability statute applies to the over 25-year-old. That's the alternative argument, getting beyond the, can the court do this, should the court do this, should the court engage in economic regulation. If we're beyond that point and we're looking at and applying the statute, which is what happened in Calgary. But I guess it is. Because you do the CCD case. I know the district judge kept using the economic regulation term in some of the cases. But isn't the real question whether or not the court has the ability to declare a certain interest rate unconscionable? Whether or not the court then imposes another one. In other words, the district court could say 90%. You could conceivably say 90% is unconscionable. I don't have to figure out why it's unconscionable. I just know this exceeds all bounds of human necessity. That's not economic regulation in the sense of saying it must be 24%. It's just saying this number must be 12. I disagree that that's what the court could do to create relief. If you think it can under the code, then I'm just saying it's not necessary that the court set an alternative rate that would be conscionable. It is, Your Honor. And not just under the code, but it's under general principles of restitution law. So we know that this is a loan. And by definition, a loan means you're going to pay interest. And the theory here is that the interest rate is a little too high. It's not that the district court can't charge any interest rate. So in order to award restitution, you can't do what they say you're going to do. You can't do it as a matter of restitution unless you're giving it to me. Your opponent's clients could actually do this. Say, you give me all the money back, and I'll give you the interest back. No, because that would be a separate issue. Your Honor. Could the court grant restitution? No, Your Honor. Now, the case of Nelson v. Pearson Ford is a UCL case. And the court specifically said there's no basis for restitution. I'm sorry, for restitution under these laws. Well, it's technically giving you extra time on your cross-appeals. So your voice is granted. We'll give a couple minutes. Thank you. Judge Adelman, I think I may have misheard your question. And if I did, I apologize. The answer is yes. The district court read 1670.5 out of the statute. What? Did she? She found procedural inconstability. So surely she thought it applied to something. Well, why did she grant reconsideration? No, she didn't say, she didn't say, I can't even find this procedural inconstability. Well, she moved to the substantive inconstability clause. She said, the one thing I can't do under the code is find the additional tax. You can find other stuff inconstant. But those are, I didn't certify those issues. Those are individual issues. But, so she didn't read it entirely out. She read an exception into it for interest of industry. The strategic substantive, I mean, she said that in order to determine liability, and then remedy if you have liability, she would have to determine what the appropriate interest rate was. And let me say why that's wrong, and why the cases, very briefly, the cash flow relies upon are wrong. In the under act, there was no legislative, directive, declaration, whatever. But it said, you can consider these factors. With respect to this case and the financial code, it expressly points to 1670.5. 1670.5 says, if you find procedural and substantive inconstability, you have three options for remedy. And in considering the remedy under the UCL, the district court can certainly consider these in the broad discretion of concurring and restoring. The court may refuse to enforce the terms of the contract as written. That's all the terms that are in the loan agreement. The court may enforce without the unconscionable terms. Or the court may delimit enforcement to those portions of the loan which she finds are not unconscionable. There's a provision of the financial code that says that with respect to all cases under this division, which includes our case, someone who makes unconscionable loans would be required to forfeit all of the interest. It's flipped. Or I want to keep this fair. You have to save a bit of extra time. But I gave you a moment. So just to sum up what I'm saying, we'll submit this case. Can you sum up? Yes. I didn't address my certification. I wanted to speak on it. The district court certified the case on the unlawful fraud of the district court. She found in her extensive analysis that there were individual issues with the certification of the unfair court. So we believe, for all the reasons that we agree, that she was correct on her own certification. And the prosecution is going to submit this case. Thank you. Thank you both sides for your arguments on this interesting case.
judges: Tashima, Hurwitz, Adelman